United States District Court
Southern District of Texas
**ENTERED**
August 07, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Joanna Wood Harris, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action H-22-94 |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of the | § | |
| Social Security Administration, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

Joanna Wood Harris appeals the Social Security Administration (SSA) Commissioner's (Commissioner) final decision denying her application for social security benefits. ECF No. 1. Pending before the court are Plaintiff's Motion for Summary Judgment, ECF No. 10, and the Commissioner's Motion for Summary Judgment, ECF No. 11. This case has been referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF No. 6. Having considered the motions, administrative record, and applicable law, the court recommends that the Commissioner's final decision be **AFFIRMED**.

### 1. Procedural Posture

Harris filed the instant application for disability insurance benefits (DIB) on October 15, 2019. Tr. 89. She alleged a disability onset date of May 3, 2019, due to intestinal obstruction, kidney stones, type 2 diabetes, high blood pressure, high cholesterol, depression, and diverticulitis. Tr. 91. Harris was fifty-three years old on the alleged disability onset date. Tr. 78.

The SSA denied Harris' application at the initial level on January 15, 2020, and on reconsideration on April 23, 2020. Tr. 89,

103. Administrative Law Judge (ALJ) David Hebert held a hearing on October 20, 2020. Tr. 40–77. At the hearing, the ALJ heard testimony from Harris and a vocational expert (VE). Tr. 41. Harris' counsel was present and had the opportunity to examine all the witnesses. Tr. 46, 76.

Harris testified that she had graduated from high school and earned 128 college credits but had not obtained a degree. Tr. 46–47. She testified that she had previous work experience as a mail clerk, bus driver, and substitute teacher. Tr. 58, 60. She testified that, although she had a driver's license, she did not drive much because she felt anxious while driving. Tr. 47.

Harris testified about her intestinal issues, which she stated caused her to gain approximately seventy-five pounds. Tr. 47. She testified that she had surgery to reverse an intestinal stricture and used a colostomy bag post-surgery. Tr. 62. She stated that, even after removal of the colostomy bag, she experienced nausea, constipation, and uncontrollable bowel movements. Tr. 48–49, 62–63. She stated that she wore diapers when leaving the house. Tr. 65. She reported fluid leakage and infection from a hernia located at the colostomy bag wound site. Tr. 48–49, 62–63. She explained that she had two hernias requiring surgery but that she could not undergo surgery until she lost additional weight. Tr. 48. She stated that her diabetes, which was not well controlled, slowed the healing process from her first surgery and that she had numerous infections after surgery. Tr. 49.

Harris reported diabetes symptoms including dizziness, seeing stars, nausea, and numbness in her right foot. Tr. 50–51. She stated that she took Zofran to control her nausea and that she had trouble balancing. Tr. 51. She stated that she could only stand for twenty minutes and sit for forty-five minutes before needing to change positions. Tr. 51–52. She stated that she had balance issues and lower back pain that radiated to her right foot. Tr. 51.

Harris stated that she had not undergone surgery or injections to alleviate her back pain but that her doctor prescribed muscle relaxers for the pain. Tr. 70. She stated that the back pain was the least concerning ailment and that her pain varied daily, but it was usually between three and eight on a scale of one to ten. *Id.*

Harris testified to experiencing depression and anxiety. Tr. 52. She stated that, even while taking medication, she had anxiety attacks and did not want to interact with others. Tr. 53. She also reported difficulty concentrating and sleeping. Tr. 53–54. Absent medication, she would go several days without quality sleep. Tr. 54, With medication, however, she stated that she could sleep better. Tr. 55. Harris also reported low energy, with only one or two good days per week. *Id.* She testified that her high blood pressure was controlled with medication. Tr. 55–56.

The VE testified that, under the Dictionary of Occupational Titles, Harris' previous bus driver position was classified as medium exertion, semi-skilled work and that her mail clerk position was classified as light exertion, unskilled work. Tr. 73. The VE clarified that, despite the position's light classification, Harris performed her mail clerk position at the medium exertional level. *Id.* The VE did not elaborate on Harris' substitute teaching position as it was part-time work. *Id.*

The ALJ asked the VE to consider a person of Harris' age, education, and work history with the following limitations:

> [T]his person could only work at a light exertional level. They could lift and carry occasionally [twenty] pounds[] [and] frequently only ten pounds[.] They could stand and walk up to six hours, [within a] normal workday with normal breaks, and sit for up to six hours. This person . . . should not climb ladders, ropes or scaffolding[,] [a]nd [should] only occasionally

3

climb ramps or stairs, [and could] occasionally balance.

Tr. 74. The VE opined that such an individual could perform Harris' past relevant work as a mail clerk but only at the light exertional level as it is commonly performed. Tr. 74. The VE opined that the individual could also perform other light unskilled jobs such as price tagger, apparel stock checker, and cashier. Tr. 74–75.

The ALJ issued a decision on February 12, 2021, finding that Harris was not disabled from May 3, 2019, through the date of the decision. Tr. 30. Harris requested review of the ALJ's decision, which the Appeals Council denied on September 22, 2021. Tr. 1–6. Harris timely filed a complaint and an application to proceed in forma pauperis in federal court on November 18, 2021. *See Harris v. Kijakazi*, 4:21-mc-2617, ECF No. 1 (S.D. Tex. Nov. 18, 2021).

## 2. *Legal Standards*

The Social Security Act provides DIB to individuals with physical and mental disabilities who have contributed to the program and were disabled "on or before the date . . . last insured." *See* 42 U.S.C. § 423; *Schofield v. Saul*, 950 F.3d 315, 319 (5th Cir. 2020). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner uses a sequential, five-step approach to determine whether the claimant is disabled. *See Schofield*, 950 F.3d at 317; 20 C.F.R. § 404.1520(a)(4) (2019). The claimant bears the burden of proof on the first four steps, and the Commissioner bears the burden on the fifth step. *See Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). A finding that the claimant is disabled or not

disabled at any point in the five-step review terminates the
analysis. 20 C.F.R. § 404.1520(a)(4) (2019).

This court's review of the ALJ's disability determination is
"highly deferential," and the court asks "only whether substantial
evidence supports the decision and whether the correct legal
standards were employed." *Garcia v. Berryhill*, 880 F.3d 700, 704
(5th Cir. 2018) (citations omitted). "A decision is supported by
substantial evidence if 'credible evidentiary choices or medical
findings support the decision.'" *Salmond v. Berryhill,* 892 F.3d 812,
817 (5th Cir. 2018) (quoting *Whitehead v. Colvin*, 820 F.3d 776, 779
(5th Cir. 2016)). "Substantial evidence is 'more than a mere
scintilla but less than a preponderance.'" *Id.* (quoting *Williams v.
Admin. Rev. Bd.*, 376 F.3d 471, 476 (5th Cir. 2004)). "It means—
and means only—'such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion.'" *Biestek v.
Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co.
of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The reviewing court
must scrutinize the record to determine whether substantial
evidence supports the ALJ's decision but may not reweigh the
evidence or substitute its judgment. *See Perez v. Barnhart*, 415
F.3d 457, 461 (5th Cir. 2005).

## 3. Analysis

### A. Step One

At step one, the ALJ must determine whether the claimant
is engaged in substantial gainful activity. 20 C.F.R.
§ 404.1520(a)(4)(i) (2019). A person engaged in substantial gainful
activity is not disabled, regardless of her medical condition, age,
education, or work experience. 20 C.F.R. § 404.1520(b) (2019).

The ALJ found that Harris had not engaged in substantial
gainful activity since the alleged disability onset date of May 3,
2019. Tr. 21. This finding is not in dispute.

### B. Step Two

At step two, the ALJ determines whether any of the claimant's impairments or any combination thereof is severe and has lasted or is expected to last a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii) (2019) (citing 20 C.F.R. § 404.1509). An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c) (2019). "[A]n impairment is not severe 'only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *Johnson v. Colvin*, 595 F. App'x 443 (5th Cir. 2015) (quoting *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985)). "A person who does not have a 'severe impairment' is not disabled." *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(c)).

The ALJ found that Harris had severe impairments of intestinal blockage requiring surgery, insulin dependent diabetes mellitus, hernia, and obesity. Tr. 21. The ALJ found that Harris' non-severe impairments included kidney stones, hypertension, high cholesterol, sciatica, right-foot neuropathy, depression, anxiety, and a gastroesophageal impairment. Tr. 21–22. The ALJ considered all of these impairments and concluded that they did not cause more than minimal work-related limitations. *Id.* The records show, for example, that Harris' hypertension and high cholesterol were controlled through diet, exercise, and medication. Tr. 311–12. Harris also testified that her high blood pressure was controlled with medication. Tr. 56. The records show that Harris' depression and anxiety responded well to medication and that Harris did not have any significant episodes of feeling down or anxious. Tr. 357. The records show that Harris' back pain was alleviated with medication, heat, and changes in position. Tr. 847. The ALJ's step two findings are not in dispute.

### C. Step Three

At step three, the ALJ determines if any severe impairment meets or equals a listed impairment in appendix 1 (Listing). 20 C.F.R. § 404.1520(a)(4)(iii)(2019); *see also* 20 C.F.R. Part 404, Subpt. P, App'x 1 (2019). The Listing describes impairments that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of . . . age, education, or work experience." 20 C.F.R. § 404.1525(a) (2019). The claimant will be found disabled if all the criteria of a Listing are met or equaled. 20 C.F.R. § 404.1520(d) (2019); *Whitehead*, 820 F.3d at 780–81. The claimant has the burden of establishing that an impairment meets or equals all of the specified medical criteria of a Listing. *Whitehead*, 820 F.3d at 780–81.

While the ALJ did not provide the exact title or number of the Listing sections he considered, his decision shows that he considered Listing sections relevant to Harris' weight loss, digestive system, diabetes, hernia, obesity, and mental disorders. Tr. 22–23. The ALJ considered Harris' mental functioning, whether her physical impairments were amenable to surgery or repair, and whether her physical impairments had caused conditions such as gastrointestinal hemorrhaging, perineal disease, ketoacidosis, or motor neuropathy, among others. Tr. 23.

Harris does not argue that the ALJ failed to consider a relevant Listing section. Instead, Harris argues that the ALJ erred at steps three, four, and five by failing to consider all of the evidence. ECF No. 10 at 6. Harris points to two letters submitted by Harris' friends, Angela Sullivan and Cherie Barker. *Id.* at 8. Harris argues that the ALJ rejected this evidence and that he "noted these letters[] [but] failed to ascribe any weight to their opinions." *Id.* at 9–10. Harris also generally asserts that the ALJ selectively cited the record and that the ALJ did not consider the combination of all of

Harris' impairments because he "neglected to examine the chronological nature of [Harris'] surgeries with the need for additional surgery." *Id.* at 10–11.

The ALJ did not reject or fail to consider the letters Sullivan and Barker submitted. It is clear from the ALJ's decision that he considered the letters, as he spent two paragraphs of his decision discussing the substance of the letters and each author's connection to Harris. Tr. 25. Harris even acknowledges this point, writing in her motion that the "ALJ noted these letters[.]" ECF No. 10 at 9.

Harris argues that the ALJ should have gone further. She argues that the ALJ erred by "fail[ing] to assess any weight to the letters[.]" ECF No. 10 at 10. However, Harris cites no regulation or caselaw requiring the ALJ to articulate the weight or persuasiveness of evidence from nonmedical sources. In fact, the regulations state that the SSA must articulate how persuasive it finds the medical opinions and prior administrative medical findings but that it is "not required to articulate how [it] considered evidence from nonmedical sources" using the same standards. 20 C.F.R. § 404.1520c(d) (2019). The court finds no requirement that the ALJ articulate the persuasiveness or weight given to nonmedical evidence. The only requirement is that the ALJ consider "all evidence in [the] case record" and "make findings about what the evidence shows." 20 C.F.R. §§ 404.1520(a)(3), 404.1520b (2019). The ALJ did just that in this case.

As for Harris' arguments that the ALJ selectively cited the record and neglected to consider the chronological nature of Harris' surgical history, Harris has not identified specifically what medical or other evidence the ALJ failed to consider. Instead, Harris merely asserts that the ALJ "omitted consideration of important evidence which document the severity of [Harris'] impairments" and states that she underwent two major surgeries in 2019 and still needs another. ECF No. 10 at 10. But if it is the surgeries that Harris believes were not considered, the ALJ's

decision discussed—multiple times—Harris' surgical history and the
need for another surgery. Tr. 20–21, 23–26, 28. The ALJ also
questioned Harris at the hearing regarding her many surgeries. Tr. 48
("What symptoms are you still having from those surgeries?"); Tr. 68
("You said you . . . need surgery. And is it scheduled? . . . And did the
doctor indicate if they thought with surgery you . . . would be cured?").
The ALJ considered Harris' medical history and future medical needs.
The ALJ need not "specifically cite each and every piece of medical
evidence considered[,]" and the failure to do so "does not establish an
actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F.
App'x 334, 335 (5th Cir. 2005).

For these reasons, Harris' arguments fail to demonstrate
reversible error at any step of the sequential analysis. Certainly, with
respect to step three, Harris has not even identified the specific Listing
section she claims to meet, much less demonstrated that she satisfies all
the specified medical criteria of any Listing section. *Whitehead*, 820
F.3d at 780–81 (stating that the claimant bears the burden to
demonstrate that her impairments meet or equal all the specified
medical criteria of a Listing section). There was no error at step three.

### D. Residual Functional Capacity

Before reaching the final two steps of the sequential
analysis, the ALJ must assess the claimant's residual functional
capacity (RFC). 20 C.F.R. § 404.1520(e) (2019) (citing 20 C.F.R. §
404.1545). The RFC is a determination of the most a claimant can
do despite all physical and mental limitations. *Perez*, 415 F.3d at
462. The RFC determination is "based on all the relevant medical
and other evidence in [the] case record[.]" 20 C.F.R. § 404.1520(e)
(2019); *see also Perez*, 415 F.3d at 461–62 (citing 20 C.F.R.
§ 404.1545(a)(1)); SSR 96-8p, 1996 WL 374184, at *2–*5 (July 2,
1996). The ALJ is responsible for assessing a claimant's RFC.
20 C.F.R. § 404.1546(c) (2019); *see also Taylor v. Astrue*, 706 F.3d

600, 602–03 (5th Cir. 2018) (stating that the RFC determination is the "sole responsibility of the ALJ").

The ALJ determined that Harris had the RFC to:

> perform light work . . . except she can only lift or carry [twenty] pounds occasionally and [ten] pounds frequently; she can stand or walk for [six] hours in an [eight-]hour day; she can sit for [six] hours in an [eight-]hour day; she can never climb ropes, ladders, or scaffolds; she can occasionally climb ramps or stairs; she can occasionally balance; and she can occasionally work at unprotected heights or around dangerous moving machinery or other hazards.

Tr. 23. The ALJ considered evidence such as the hearing testimony, letters from Harris' friends, the medical opinions, the prior administrative medical findings, and Harris' function report in assessing her RFC. Tr. 24–28.

The ALJ found that Harris' statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. Tr. 25. For example, the ALJ noted that, although Harris' surgical wound healed slowly, it healed appropriately and did not require more than ordinary wound care. Tr. 25, 427, 506. Harris' diabetes had been improving with medication, and her hernia could be repaired with surgery once she lost additional weight. Tr. 363, 912. The ALJ found that Harris' impairments caused her to have significant limitations, but the impairments did not prevent Harris from performing her past work as a mail clerk. Tr. 25.

The ALJ thoroughly discussed Harris' function report. Tr. 24. The function report indicates that, although Harris had mobility issues, Harris could dress and bathe herself, prepare meals, perform light household chores, and drive independently. Tr. 222–24. Harris also could shop in person and online, handle

her own finances, and socialize regularly with others at church or while eating out. Tr. 224–26.

The ALJ considered the state agency medical consultants' opinions. Tr. 27. The medical consultants at both the initial and reconsideration levels of review found that Harris had both exertional and postural limitations due to her abdominal wounds. Tr. 85, 98. Both consultants determined that Harris could only frequently lift twenty-five pounds, climb ramps or ladders, stoop, kneel, or crouch. Tr. 84–85, 97–98. The ALJ found these opinions to be supported by Harris' surgical wound healing but found that work at the medium exertional level was inconsistent with Harris' poorly controlled diabetes, morbid obesity, and unrepaired hernia. Tr. 27–28. The ALJ found these opinions to be unpersuasive and limited Harris to a greater degree. Tr. 28.

The ALJ considered the state agency psychological consultants' opinions. Tr. 28. The psychological consultants at both the initial and reconsideration levels of review found that Harris' mental impairments were non-severe and that she had only mild limitations in mental functioning. Tr. 82, 95. The ALJ found these opinions to be supported by the lack of treatment demonstrating depressive symptoms and the treatment notes indicating that Harris' depression was stable and controlled by medication. Tr. 28. The ALJ found these opinions to be persuasive. Tr. 28. Based on the foregoing, the ALJ properly considered the supportability and consistency of the medical opinions and administrative medical findings. *See* 20 C.F.R. §§ 404.1520c(a), (b)(2) (2019) (requiring the SSA to explain how it considered the factors of supportability and consistency in evaluating the persuasiveness of medical opinions and administrative medical findings).

The ALJ's RFC determination is not meaningfully in dispute. In addition to the reasons discussed above in Part 3.C.,

Harris has not specifically identified what portion of the RFC she challenges or cited any evidence showing that the ALJ should have further limited Harris' RFC. The court's independent review of the record confirms that the ALJ's assessment is consistent with the law and supported by substantial evidence.

### E. Step Four

At step four, the ALJ determines whether the claimant can perform jobs she previously worked by comparing the RFC determination with the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(f) (2019); *see also Perez*, 415 F.3d at 462. If the claimant can perform her past work, she is not disabled. 20 C.F.R. § 404.1520(f) (2019). If the claimant cannot perform her past work, the ALJ proceeds to step five. *See* 20 C.F.R. § 404.1520(g)(1) (2019).

The ALJ determined that Harris could perform her past work as a mail clerk at the light level, as it is generally performed. Tr. 28. For the reasons discussed in Part 3.C., Harris' arguments do not warrant reversal. The ALJ did not err at step four. Although the ALJ could have ended the analysis here, he continued to step five to determine whether Harris could adjust to other work in the national economy. Tr. 28–30.

### F. Step Five

At step five, the ALJ determines whether the claimant can perform any other work by considering the claimant's RFC and other factors, including age, education, and past work experience. *Schofield*, 950 F.3d at 318 (quoting 20 C.F.R. § 404.1520(a)(4)(v)). If the claimant can perform other work available in the national economy, the claimant is not disabled. *Schofield*, 950 F.3d at 318 (citing 20 C.F.R. § 404.1520(g)).

The ALJ found that Harris could perform jobs that exist in significant numbers in the national economy. Tr. 28–30. The ALJ relied on the VE's testimony that an individual of Harris' age,

education, work experience, and RFC could adjust to work as a price tagger, apparel stock checker, or cashier. Tr. 29. The ALJ concluded that Harris was not disabled. Tr. 29.

Because the VE's testimony was based on the ALJ's hypothetical question that incorporated all the limitations reasonably recognized by the ALJ, and Harris' attorney had the opportunity to cross examine the VE, the VE's testimony is substantial evidence supporting the ALJ's step-five determination. *See Masterson v. Barnhart*, 309 F.3d 267, 276–74 (5th Cir. 2002) (holding that the ALJ properly relied on the VE's testimony because the ALJ "scrupulously incorporated" all the limitations "supported by the evidence and recognized by the ALJ" and gave an opportunity for cross examination). Accordingly, the ALJ's findings at step five are supported by substantial evidence. The ALJ's findings at step five are not meaningfully disputed, as Harris has not articulated specific challenges to the step five determination and has not cited specific evidence requiring a different result.

### 4. Conclusion

The ALJ's decision denying social security benefits is consistent with the law and supported by substantial evidence. There is no genuine issue of material fact, and summary judgment is appropriate. Fed. R. Civ. P. 56(a), (c). Accordingly, the court recommends that Harris' Motion for Summary Judgment be **DENIED**; that the Commissioner's Motion for Summary Judgment be **GRANTED**; and that the Commissioner's final decision be **AFFIRMED**.

The parties have fourteen days from service of this Memorandum and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. Failure to timely file objections will preclude appellate review of factual findings or legal conclusions, except for plain error. *See Thomas v. Arn*, 474 U.S.

140, 147–49 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).

Signed at Houston, Texas on August 7, 2023.

Peter Bray
United States Magistrate Judge